J-A26008-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| THOMAS SLEE AND KEVIN R. MILEY AND FRANK B. MILEY, JR., ADMINISTRATORS OF THE ESTATE OF MARY SLEE, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| FRANK MOZDY, M.D. AND THE CHAMBERSBURG HOSPITAL | |
| Appellees | No. 613 MDA 2014 |

Appeal from the Judgment Entered March 27, 2014
In the Court of Common Pleas of Franklin County
Civil Division at No(s): 2011-2593

BEFORE:  BOWES, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY MUNDY, J.:　　　　　　　**FILED DECEMBER 05, 2014**

Appellants, Thomas Slee, Kevin R. Miley, and Frank B. Miley, Jr., as administrators of the estate of Mary Slee (Decedent), appeal from the March 27, 2014 judgment entered in favor of Appellees, Frank Mozdy, M.D. and the Chambersburg Hospital.  After careful review, we affirm.

The trial court succinctly summarized the relevant factual and procedural background of this case as follows.

> This medical malpractice case was tried before a jury on November 18 and 19, 2013.  Prior to trial, Frank Mozdy, M.D. ("Dr. Mozdy") stipulated to a breach in the standard of care of [Decedent] during her hospitalization in May 2008.  The trial was solely on the issues of causation and damages.  The jury found that Dr. Mozdy's conduct was not a factual

cause of [Decedent]'s harm and therefore did not address the issue of damages.

After previously having a nodule on her left upper arm frozen, in 2006 when the nodule returned [Decedent] had it surgically removed. In addition to removing the entire tumor, the doctor also removed two sentinel lymph nodes. Pathology results indicated that Mary had melanoma, but that no metastases had occurred through her lymphatic system.

On May 30, 2008, [Decedent] was admitted to Chambersburg Hospital for shortness of breath. A CT scan of her chest was performed in order to rule out a pulmonary embolism. While the CT scan did not reveal a pulmonary embolism, it did show a 6.4 mm nodule in the right lower lobe of [Decedent]'s lung. The radiologist recommended a follow-up in three months. However, [Decedent] was never informed of the radiologist's findings or recommendation, nor were they noted in her discharge summary prepared by Dr. Mozdy [Dr. Mozdy stipulated that his failure to inform Decedent of the recommended follow-up was a breach of the standard of care]. As a result, [Decedent]'s family physician, Dr. Anita Chadwick, never scheduled the recommended follow-up, which she would have done had she known about the radiologist's findings.

On July 23, 2009, [Decedent] fell while at work and struck her head. She was brought to the Chambersburg Hospital where she underwent an MRI … at the [insistence] of her family. The MRI revealed that [Decedent] had fifteen masses in her brain, some of which had bleeding and some of which had swelling. A CT scan of her chest showed that the nodule in her lung had increased in size since it was identified in 2008.

[Decedent] was transferred to Johns Hopkins Hospital …. The tumors in [Decedent]'s brain were biopsied and found to be metastatic melanoma. The nodule in [Decedent]'s lung was never biopsied;

however, the experts agree to a reasonable amount of medical certainty that it was metastatic melanoma. Sadly, [Decedent] … died … on August 11, 2011.

Three expert witnesses testified at trial. Dr. Russell Fuhrer, a board certified radiation oncologist testified on behalf of the [Appellants]. Dr. George Murphy, a board certified pathologist, and Dr. Michael Mastrangelo, a board certified medical oncologist, testified on behalf of Dr. Mozdy. The experts disagreed as to whether [Decedent] had tumors in her brain when she had the CT scan of her lung in May 2008.

Trial Court Opinion, 3/12/14, at 1-3 (footnote omitted). On November 19, 2013, the jury found that Dr. Mozdy's negligence was not a factual cause of harm to [Decedent]. Verdict Slip, 11/19/13. Appellants filed a motion for a new trial on November 26, 2013. The trial court denied the motion on March 12, 2014 and entered judgment on March 27, 2014. On April 7, 2014, Appellants filed a timely notice of appeal.[1]

On appeal, Appellants raise the following issue for our review.

A. Whether the trial court abused its discretion in failing to grant a new trial when the medical testimony in this case was so clear and uniform that reasonable minds could not have differed on the question of whether the delay in [Decedent]'s diagnosis and treatment decreased her life span, and therefore caused her harm?

---

[1] Appellants and the trial court have timely complied with Pennsylvania Rule of Appellate Procedure 1925. Specifically, the trial court adopted the reasoning set forth in its March 12, 2014 opinion denying Appellants' post trial motion.

- 3 -

Appellants' Brief at 11.

We begin by noting our well-settled standard of review with regard to a motion for a new trial.

> Our review of the trial court's denial of a new trial is limited to determining whether the trial court acted capriciously, abused its discretion, or committed an error of law that controlled the outcome of the case. In making this determination, we must consider whether, viewing the evidence in the light most favorable to the verdict winner, a new trial would produce a different verdict. Consequently, if there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed.

*Joseph v. Scranton Times, L.P.*, 89 A.3d 251, 260 (Pa. Super. 2014) (citations omitted).

In the instant case, Appellants aver the jury verdict in this case was against the clear weight of the evidence. Appellants' Brief at 8. However, we observe, "[a] new trial based on weight of evidence issues will not be granted unless the verdict is so contrary to the evidence as to shock one's sense of justice; a mere conflict in testimony will not suffice as grounds for a new trial." *Daniel v. William R. Drach Co., Inc.*, 849 A.2d 1265, 1267 (Pa. Super. 2004) (citation omitted).

> Upon review, the test is not whether this Court would have reached the same result on the evidence presented, but, rather, after due consideration of the evidence found credible by the [jury], and viewing the evidence in the light most favorable to the verdict winner, whether the court could reasonably have reached its conclusion.

- 4 -

*Id.* (citation omitted).

Appellants advance the argument that "[t]he testimony was so clear that the [t]rial [c]ourt's failure to grant a new trial was a miscarriage of justice." Appellants' Brief at 13. We cannot agree. At trial, the jury heard testimony from three medical experts. Dr. Russell Fuhrer was qualified as an expert in radiation oncology and the treatment of metastatic melanoma. N.T., 11/19/13, at 19. He testified, on behalf of Appellants, as to two possible scenarios had Decedent received follow-up care three months after her hospitalization in May 2008, as recommended by the radiologist.

> Q. Now Doctor, … you provided two different scenarios for what if [Decedent] had a proper work-up in 2008, is that true?
>
> A. Yes.
>
> Q. Can you please tell us what the first one was?
>
> A. So, if she had received the proper work up 11 months prior to 2009, and either there would have been no metastasis or smaller brain metastasis in the brain at that point.
>
> …
>
> Q. Do you have an opinion within a reasonable degree of medical certainty whether under [the first] scenario she would have had a better chance at living a longer, healthier life?
>
> A. Yes, she would have. There's a narrow window in melanoma where resecting a single site of metastatic disease gives some patients a benefit in their survival advantage if it's caught in just one site and it's successfully operated on.

…

> Q. Now Doctor, based on [the second] scenario, did you reach a conclusion within a reasonable degree of medical certainty regarding whether earlier diagnosis and treatment of [Decedent]'s metastatic melanoma would have increased her chances of living a longer healthier life?
>
> A. Nobody can predict the future. You can't specifically say, ya know, when we make decisions about treating an individual patient we base that on experience with other patients and experiences in the literature, and had she had just the pulmonary nodule and that been resected, that outcome could very well have been different.
>
> …
>
> Q. And based on the first scenario, a tumor in her lung, but not in her -- but no tumors in her brain, she had a better chance of avoiding the pain and suffering she went through?
>
> A. Yes.
>
> Q. The second scenario, she still would have had the pain and suffering but would have lived longer?
>
> A. There's a greater likelihood of her living longer, yes.

*Id.* at 37-41. On cross-examination, Dr. Fuhrer agreed that metastatic melanoma is among the more aggressive tumors and "that it generally responds poorly to most treatments." *Id.* at 54.

Dr. George Murphy testified on behalf of Appellees and was qualified as an expert in the fields of pathology and dermatology, with expertise in the field of malignant melanoma. *Id.* at 76-77. He opined, "my experience

has been that patients with brain metastases have a very poor prognosis in melanoma. And so therefore, my opinion would be that her prognosis would have not been a favorable one in 2008." *Id.* at 94. He acknowledged his professional role is to render diagnoses that lead to treatment, to sometimes advise with regard to treatment, and to assess efficacy of treatment on occasion. *Id.* He further acknowledged his expertise was not in medical oncology by testifying, "[w]ell, my experience in working with medical oncologists and melanoma oncologists has been that once brain metastases have occurred, they're extraordinarily difficult to effectively treat and to alter quality of life and/or prognosis. That would, of course, need to also be evaluated from the context of medical oncology." *Id.* at 95.

Following the testimony of Dr. Murphy, Dr. Michael Mastrangelo testified on Appellees' behalf as an expert witness in the area of medical oncology, "competent to testify with respect to biology, treatment, metastasis, and prognosis of the disease." *Id.* at 125. Dr. Mastrangelo testified to a reasonable degree of medical certainty that the cancer spread to Decedent's brain prior to 2006. *Id.* at 128. Dr. Mastrangelo also testified to the effect a follow-up visit would have had on Decedent's prognosis.

> Q. Okay, and Doctor, do you have an opinion to a reasonable degree of medical certainty whether any follow-up of that CT in May of 2008 would have provided any significant improvement in the overall prognosis for [Decedent]?
>
> A. Once the tumor metastasizes beyond the primary site and is not in the regional lymph nodes, these

> people die of their disease. The only question is when. … [I]t's difficult to prove more intensive testing actually changes the outcome.
>
> If you test more intensely, you find the disease earlier, we initiate the treatment earlier, prolongs life somewhat; however, it doesn't cure you. You still die. The outcome is still the same.

*Id.* at 129-130.

Based on the aforementioned testimony, the jury found the failure of Dr. Mozdy to inform Decedent of the recommendation to follow-up within three months of his treatment of her was not a factual cause of the harm she suffered. *See* Verdict Slip, 11/19/13. The evidence revealed that the type of cancer Decedent had was aggressive. Though Dr. Fuhrer testified on behalf of Appellants that there was a "narrow window" where treatment may have provided a benefit under one hypothetical scenario, he also agreed that this type of cancer "responds poorly to most treatments." *See* N.T., 11/19/13, at 39, 54.

Therefore, viewing this evidence in the light most favorable to Appellees, as verdict winner, we cannot conclude a new trial would result in a different verdict. *See Joseph, supra*. The jury in this case found that Dr. Mozdy's departure from the standard of care was not the factual cause of Decedent's harm. After due consideration of the evidence, we conclude this was a reasonable conclusion. *See Daniel, supra*. Therefore, we reject Appellants' argument that the jury verdict was against the clear weight of the evidence. *See* Appellants' Brief at 8.

Based on the foregoing, we conclude the trial court did not abuse its discretion when it denied Appellants' motion for a new trial and entered judgment in accordance with the jury's verdict. **See Joseph**, **supra**. Accordingly, the trial court's March 27, 2014 judgment is affirmed.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/5/2014